**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MARK THORP,** | |
| **Plaintiff,** | |
| **v.** | Civil Action No.  15-195 (JEB) |
| **THE DISTRICT OF COLUMBIA,** *et al.*, | |
| **Defendants.** | |

**<u>MEMORANDUM OPINION</u>**

Mark Twain once observed, "[T]he dog is a gentleman; I hope to go to his heaven, not man's."  Letter to William D. Howells, April 2, 1899, in <u>Selected Mark Twain-Howells Letters 1872-1910</u> at 331 (Anderson *et al.* eds., 1967).  Plaintiff Mark Thorp, a dog owner who alleges that members of the Metropolitan Police Department treated him and his canine companion in an ungentlemanly and unconstitutional manner, would doubtless agree.  In the current suit, he complains that MPD officers, *inter alia*, unlawfully searched his house, improperly seized and damaged his property, abused their law-enforcement authority to intimidate him, maliciously initiated unfounded criminal proceedings against him, and injured his dog.  Defendants – the District of Columbia and a single named police officer – now move to dismiss the Complaint, and Thorp cross-moves for partial summary judgment.  After addressing all ten counts of the Complaint, the Court will grant in part and deny in part Defendants' Motion and deny Thorp's altogether.

## I.    Background

Thorp, a resident of the District of Columbia, brings this suit against the District and Lieutenant Ramey Joseph Kyle, an MPD officer, in his individual capacity.  <u>See</u> Second

Amended Complaint (SAC), ¶¶ 11-13.  For purposes of Defendants' Motion to Dismiss, the

Court views the facts as pled in the Second Amended Complaint as true.  See ECF No. 22.  (It

will address the facts in Thorp's Motion in Section III.K, *infra*.)

Thorp alleges that the catalyst for the events detailed in his latest Complaint was a

defamation suit he brought – and ultimately won – in D.C. Superior Court against non-party

Kathy Henderson.  Id., ¶¶ 16-17.  In that action, Thorp claimed that Henderson, an Advisory

Neighborhood Commissioner, had published false statements suggesting that Plaintiff's

company, JVLHC, LLC – operator of the local bar Jimmy Valentine's Lonely Hearts Club – had

violated the law and threatened public safety by selling illegal drugs.  Id., ¶ 16.  The Superior

Court found in his favor and awarded his company more than $150,000 in damages and attorney

fees, but, Plaintiff alleges, members of MPD "attempted to interfere and delay the execution of

[that] judgment."  Id., ¶¶ 16-22.  Such interference was the subject of another lawsuit in this

Court, JVLHC, LLC v. Hughes, No. 14-1747, id. ¶ 23, which was voluntarily dismissed by

JVHLC.  See No. 14-1747, ECF No. 7.

With that prior dispute as a backdrop, Plaintiff's allegations here center on Defendant

Kyle, the MPD officer whose unit is responsible for enforcing narcotics violations in Plaintiff's

neighborhood but allegedly has no mandate to enforce "animal violations."  See SAC, ¶¶ 30-31.

According to Thorp, Kyle "is, or has previously been, in a romantic relationship with a woman

who previously had a romantic relationship with the Plaintiff," and this shared personal history is

the source of Kyle's animus toward Thorp.  Id., ¶¶ 29, 46.  That animus, Thorp believes, led

Kyle to conspire "with Henderson and unknown members of the Metropolitan Police Department

Command staff . . . to use assets and personnel of the [MPD] to intimidate and retaliate against"

Thorp for filing his lawsuit against Henderson.  Id., ¶ 34.  He alleges that MPD officers have

posted themselves outside his house, stopped him and searched his vehicle without probable cause, issued parking tickets on his legally parked vehicles, and "taunt[ed] the Plaintiff by yelling into the windows of his residence." Id., ¶¶ 38-41.

Plaintiff alleges that on the day that a local newspaper announced the sale of Henderson's property at auction to help satisfy the Superior Court judgment, Kyle, accompanied by other members of his MPD unit, executed a "no knock" search warrant "purportedly and solely for an allegation of animal cruelty regarding the Plaintiff's dog." Id., ¶ 42. Thorp states that the warrant was based on false statements, was intended to intimidate him, and did not yield any evidence of animal cruelty. Id., ¶¶ 43-50. Plaintiff alleges that Kyle's true motive was to search for illegal drugs in Thorp's home and that after Thorp's dog was found unharmed, Kyle exceeded the scope of the original warrant by searching through "closed containers." Id., ¶¶ 50-54. Inside, he found substances that tested positive for amphetamines. Id., ¶ 54; see also MTD at 8 (indicating that the amphetamines were found in Plaintiff's freezer).

Following that discovery, "Kyle sought an additional search warrant." Id., ¶ 54. Yet Thorp insists that he had a "current and legal prescription for at least one amphetamine based pharmaceutical"; that Kyle knew of that prescription; and that Kyle "knowingly withheld his knowledge" of the prescription when MPD applied for an additional search warrant on the basis of the discovered amphetamines. Id., ¶¶ 55-58. After this second search – which Thorp deems a "raid" – Kyle arrested and charged him with animal cruelty and possession of illegal drugs. Id., ¶¶ 59, 64. Plaintiff further alleges that during the two searches, Kyle or his MPD team seized Thorp's dog, cash receipts from his nightclub businesses, and "[o]ther valuable property . . . including jewelry," and that they destroyed "[n]umerous items" of his property, including much of his furniture, in the process. Id., ¶¶ 62-66. Plaintiff alleges that both he and his dog suffered

3

various injuries during and after the raid, and that he was "subjected to burdensome and humiliating conditions of pre-trial release" before the criminal charges against him were dropped.  Id., ¶¶ 69-80.

Seeking redress for these injuries and the purportedly unlawful events that produced them, Plaintiff brought the instant lawsuit, requesting compensatory and punitive damages and attorney fees.  His original Complaint advanced eight counts and was accompanied by a Motion for a Temporary Restraining Order and a Motion for a Preliminary Injunction.  The Court denied the former, and Thorp subsequently withdrew the latter and filed an Amended Complaint.  See ECF Nos. 1, 3, 4, 12, 13, and Minute Order of Feb. 13, 2015.  Defendants then filed a Motion for More Definite Statement, arguing that the changed circumstances of the dispute between Thorp and Kyle – e.g., the return of the dog – as well as Thorp's voluntary dismissal of one of the original Defendants, merited a restatement of Plaintiff's substantive claims.  See ECF No. 17 at 1.  The Court agreed and ordered Thorp to file a Second Amended Complaint; he complied, and that pleading is the one at issue here.  See ECF Nos. 20, 22.  Plaintiff now advances ten separate counts – "deprivation of property," "deprivation of a liberty interest," Fourth Amendment "deprivation," negligent supervision and retention, conspiracy, common-law malicious prosecution, § 1983 malicious prosecution, two counts of abuse of process, and "injunctive relief" – under 42 U.S.C. §§ 1983, 1985, and the common law of the District of Columbia.  See SAC, ¶¶ 81-133.

Defendants now move to dismiss the Second Amended Complaint, and Thorp both opposes that Motion and also moves for Partial Summary Judgment.

## II.      Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a claim for relief when the complaint "fail[s] to state a claim upon which relief can be granted."  In evaluating a motion to dismiss under Rule 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged."  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citation omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint.  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678 (internal quotation marks omitted).  Though a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555-56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  A motion to dismiss under Rule 12(b)(6) must rely solely on matters within the complaint, see Fed. R. Civ. P. 12(d), which includes statements adopted by reference as well as copies of written instruments joined as exhibits.  See Fed. R. Civ. P. 10(c).  Where the Court must consider "matters outside the pleadings" to reach its conclusion,

a motion to dismiss "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); see also Yates v. District of Columbia, 324 F.3d 724, 725 (D.C. Cir. 2003).

Summary judgment, conversely, is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson, 477 U.S. at 248).

Although the Court must view all of the facts in the light most favorable to the non-moving party, the non-moving party's opposition must consist of more than mere unsupported allegations or denials, and it must be supported by affidavits, declarations, or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); see also Scott v. Harris, 550 U.S. 372, 380 (2007) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III.   Analysis

In considering the two competing Motions, the Court will devote the lion's share of its discussion to separate analyses of each of Plaintiff's counts. It will then conclude with a brief examination of his Motion for Partial Summary Judgment.

A.  Monell Liability

Before proceeding to its count-by-count analysis, the Court must first address the

threshold issue of the District's liability here for constitutional violations.  Plaintiff unhelpfully

never specifies which of his ten counts is asserted against which Defendant, forcing the Court to

assume that all are alleged against both the District and Kyle.  While some of the common-law

counts rely on a theory of vicarious liability (*e.g.*, Counts VII-IX), the constitutional ones

(Counts I-III, purportedly IV, and VI), which are brought under 42 U.S.C. § 1983, cannot do so.

Instead, "[t]o state a Section 1983 claim against a municipality, a plaintiff must . . . allege

that it maintained a policy or custom that caused the violation of his or her constitutional rights."

Kenley v. District of Columbia, 83 F. Supp. 3d 20, 34 (D.D.C. 2015) (emphasis added) (citing

Connick v. Thompson, 131 S. Ct. 1350 (2011), and Monell v. Dep't of Soc. Servs. of City of

New York, 436 U.S. 658 (1978)).  "The mere assertion that the police officer was acting . . .

pursuant to the policies of [the municipality] is not specific enough to withstand dismissal"

where the Plaintiff "fail[s] to allege that his claimed constitutional harm was caused by a policy

statement, ordinance, regulation, or decision promulgated or adopted by" the municipality.

Miller v. Barry, 698 F.2d 1259, 1260 (D.C. Cir. 1983) (*per curiam*) (affirming motion to

dismiss) (internal quotation marks and citation omitted).  Put another way, the "official policy

must be the moving force of the constitutional violation in order to establish liability of a

government body under § 1983."  Polk County v. Dodson, 454 U.S. 312, 326 (1981) (internal

quotation marks and citation omitted).

As the Supreme Court has explained, a pattern or policy "includes the decisions of a

government's lawmakers, the acts of its policymaking officials, and practices so persistent and

widespread as to practically have the force of law."  Connick, 131 S. Ct. at 1359.  A plaintiff

may also allege that the municipality demonstrated deliberate indifference to a risk of constitutional violations, resulting in those transgressions.  See Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003); see also Costello v. District of Columbia, 826 F. Supp. 2d 221, 224 (D.D.C. 2011) (explaining that in order to state claim for Monell liability against the District, a plaintiff must allege that municipality (1) explicitly adopted policy that caused constitutional violation, (2) knowingly ignored practice that was consistent enough to constitute custom, or (3) failed to respond to a need in such a manner as to show deliberate indifference to risk of constitutional violations).

In this case, Plaintiff only alleges an injury caused by a "policy or custom" of the District in Count II and "a deliberate indifference to [Thorp]'s constitutional rights" in Count IV.  See SAC, ¶¶ 93, 105.  Because no other cause of action includes allegations of any official municipal policy, the District cannot be liable under § 1983 for Counts I, III, and VI.

In Count II, Thorp does allege that a deprivation of his liberty in connection with his seizure "was condoned or directed by policymakers of the Metropolitan Police Department and amounts to an official policy or custom of the District of Columbia Government."  Id., ¶ 93.  But he identifies no explicit or implicit policy related to any of the litany of injuries asserted in the count, does not explain how Kyle was directed by policymakers, and does not connect any such directions to specific constitutional injuries he suffered.  The stand-alone allegation of a policy or custom, therefore, is a "statement [that] is nothing more than 'a legal conclusion couched as a factual allegation,' which the Court is not obligated to accept.'"  Kenley, 83 F. Supp. 3d at 35 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  This count, too, cannot proceed against the city.

As for Count IV, which asserts a negligent-supervision claim, Thorp alleges that Kyle was "known by the Metropolitan Police Department to conduct unlawful searches of private property"; that "[r]ather than discipline Defendant Kyle or remove him from service as a police officer, the District of Columbia has rewarded and encouraged such misconduct by . . . a series of promotions and transfers"; and that "[s]uch conduct by the District of Columbia demonstrates a deliberate indifference to the Plaintiff's constitutional rights."  SAC, ¶¶ 103-105.  It is unclear whether Thorp intends to plead a common-law or constitutional claim in this count, but the Court will give him the benefit of the doubt by considering both.

If it were the latter, the count would fail, for while it recites some of the elements of Monell liability premised on "deliberate indifference," it is unaccompanied by any specific factual allegations about Kyle's prior "unlawful searches of private property" or about how MPD came to know or should have known about those searches.  The facts alleged in the Complaint must establish "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations.  Deliberate indifference is determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations, an objective standard."  Baker, 326 F.3d at 1306-07 (internal citations omitted).  For such a claim, "[a] showing of simple or even heightened negligence will not suffice."  Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 407 (1997).  Plaintiff's allegations should demonstrate that "the plainly obvious consequence of the decision" to retain Kyle in his current position or without additional oversight, based on what the District knew about his prior conduct, "would be the deprivation of a third party's federally protected right."  Id.  Because they do not do so, the Court will dismiss this count as insufficient under § 1983.  The Court will,

however, consider the common-law negligent-supervision claim against the District in Section III.E, *infra*.

Having now dismissed all constitutional claims against the District, the Court may proceed to look at each count individually.

B. Count I: "Deprivation of Property Interest"

Plaintiff's first count is vaguely entitled "Deprivation of Property Interest" and alleges that his "dog and other property were seized without lawful cause" and "for an unlawful purpose," that damage was done to both his dog and other property, and that he "suffered additional consequential financial damages by deprivation of lawfully possessed funds." SAC, ¶¶ 82-87. Rather than challenging the legal sufficiency of these allegations, Defendants dispute the veracity of Plaintiff's assertion that he has been permanently deprived of any property. See MTD at 6. Such an approach fails to take the factual allegations in the Complaint as true, as required on a Rule 12(b)(6) motion. Iqbal, 556 U.S. at 678. It therefore cannot provide the basis for dismissal of Count I.

Yet there is a more fundamental flaw inherent in this count. To begin, Plaintiff never explains whether he is asserting a Fourth Amendment claim for an improper seizure of property or a Fifth Amendment claim for a deprivation of property without due process. If it is the former, then the count is identical to Count III. If it is the latter – although Thorp never mentions due process or the Fifth Amendment – it cannot survive. While the deprivation of property without due process of law is, to be sure, a violation of the Due Process Clause of the Fifth Amendment, "[t]he Fourth Amendment expressly governs the genus of pretrial deprivations alleged in this action – the seizure of [P]laintiff's personal property." Robinson v. Pezzat, 83 F. Supp. 3d 258, 265 (D.D.C. 2015); see also Elkins v. District of Columbia, 690 F.3d 554, 562

(D.C. Cir. 2012) (holding that Plaintiff could not "use the search of her home or the seizure of documents as grounds for a claim under the Fifth Amendment" because "[t]he remedy for any harm . . . from the search of her home is governed by the Fourth Amendment"). Where, as here, Plaintiff's property was seized during a pretrial search, complaint of that seizure sounds in the Fourth Amendment. The Court, accordingly, will dismiss Count I as duplicative of Count III, wherein Thorp's unreasonable-search-and-seizure claims lie.

C. Count II: "Deprivation of a Liberty Interest"

Count II is even more confounding. Labeled "Deprivation of a Liberty Interest," it contains mismatched elements of a Fourth Amendment claim for an improper arrest, a Fifth Amendment claim for a due-process violation, and a First Amendment claim for unlawful retaliation. See SAC, ¶¶ 88-93. Such inartful pleading leaves the Court at a loss as to how to proceed. To give Thorp the benefit of the doubt, the Court will charitably assume he means the first, since he never explains the due-process violation or alleges how the First Amendment relates to a "liberty interest."

If viewed as a Fourth Amendment claim for false arrest, Count II stands on firmer footing. Although Plaintiff describes the injury at issue as "the violation of the sanctity of his home, the ongoing seizure of his property without due process, the imposition of burdensome limitations on his freedom, and the deprivation of the companionship and well being of his dog," he also mentions "unlawful arrest." Id., ¶ 90. "It is well settled that an arrest without probable cause violates the [F]ourth [A]mendment." Martin v. Malhoyt, 830 F.2d 237, 262 (D.C. Cir. 1987). "An arrest is supported by probable cause if, 'at the moment the arrest was made, . . . the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that

the suspect has committed or is committing a crime."  Wesby v. District of Columbia, 765 F.3d

13, 19 (D.C. Cir. 2002) (modifications in original) (quoting Beck v. Ohio, 379 U.S. 89, 91

(1964)).  Thorp alleges that he was "arrested and charged by Defendant Kyle with animal cruelty

and possession of illegal drugs," but that "[s]uch charges lacked any factual basis of lawfully

obtained evidence supporting probable cause."  SAC, ¶¶ 59-60.  Taking such allegations as true,

and assuming this is the claim Plaintiff means to assert, the Court believes Thorp has stated a

non-duplicative Fourth Amendment ground for relief.  At the same time, the Court will permit

Defendants to subsequently raise a qualified-immunity defense to this claim.  They did not do so

in their Motion to Dismiss – presumably because Count II is so ambiguous – but the Court

declines to penalize Defendants for Plaintiff's lack of clarity.

 D.  Count III: "Fourth Amendment Deprivation"

 Count III, which alleges that Kyle violated the Fourth Amendment through his search of

Plaintiff's home and seizure of Plaintiff's property, is in many ways the heart of this lawsuit.

Thorp claims that his "home was broken into, searched and ransacked"; that Defendants lacked

probable cause for the search; that Kyle and his police team went "beyond the scope of what was

permitted by the Superior Court" in the warrant; that they did so knowingly and repeatedly; and

that his property was "seized, damaged, converted, stolen and/or destroyed" despite Defendants'

knowing that such property had "no evidentiary value to any criminal proceeding."  SAC, ¶¶ 95-

100.

 Defendants appropriately divide Thorp's Fourth Amendment claim into four "sub-

claims": (1) the original animal-cruelty warrant was insufficient; (2) Defendants "executed that

initial warrant improperly" by exceeding its scope and unlawfully seizing or damaging Plaintiff's

property; (3) the second warrant, which was procured on the basis of the discovered

amphetamines, was invalid; and (4) the scope of the search under the second warrant was also improper.  See MTD at 7.  The Court agrees that these four sub-claims capture the allegations Plaintiff raises in Count III and will address each in turn.

### A.  Insufficiency of First Warrant

Thorp initially alleges that the first search warrant, "purportedly and solely for an allegation of animal cruelty regarding the Plaintiff's dog," was "devoid of probable cause that any offense had occurred" or "that any evidence of any offense would be found inside the Plaintiff's home."  SAC, ¶¶ 42-44.  According to him, the warrant was based on false statements of various MPD officers, and the application for it was completed under Kyle's direction.  Id., ¶¶ 45-46.

In moving to dismiss, Defendants first suggest that the Complaint fails to "explain[] how Lt. Kyle participated in giving false information when other officers procured the warrant," MTD at 7, but the Complaint clearly alleges that the "warrant was made at the behest of" Kyle. See SAC, ¶ 46.  Defendants then argue that Kyle enjoys qualified immunity for the execution of the first warrant.  See MTD at 7-8.  "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action . . . ."  Anderson v. Creighton, 483 U.S. 635, 639 (1987) (citation omitted).  "[W]hen it is obvious that no reasonably competent officer would have concluded that a warrant should issue[,] . . . [t]he 'shield of immunity' otherwise conferred by the warrant . . . will be lost."  Messerschmidt v. Millender, 132 S. Ct. 1235, 1245 (2012) (internal quotation marks and citations omitted).  Defendants contend that since Kyle did not himself procure the first search warrant and because it was facially valid, his reliance on the warrant was reasonable.

Plaintiff, however, alleges that "Kyle used false information to obtain the animal cruelty search warrant s[o] that he could search the Plaintiff's home for illegal drugs, despite having no probable cause to believe illegal drugs would be found in the home." SAC, ¶ 52. He also alleges that the warrant "was based solely upon . . . false statements" and that it was "made at the behest of" Kyle. Id., ¶¶ 45-46. In essence, Thorp believes Kyle knowingly directed officers in his unit to secure a search warrant for Plaintiff's home using false information; if this were true, it would be objectively unreasonable for Kyle to rely on a search warrant he knew was improperly procured. The Fourth Amendment is unambiguous that warrants shall not issue without "probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. That such "probable cause" cannot be based on false statements motivated by suspicion or animus is elementary; "[n]o reasonable officer could claim to be unaware of the basic rule." Groh v. Ramirez, 540 U.S. 551, 564 (2004). As a result, taking the allegations in the Complaint as true, the Court cannot conclude that Kyle was entitled to qualified immunity for the procuring of the first search warrant.

### B. Improper Execution of First Warrant

Defendants offer no reason to dismiss the "sub-claim" within Count III relating to the manner in which the first search was conducted. Plaintiff alleges that the officers knowingly and repeatedly exceeded the scope of the first warrant; they damaged or stole his property, despite knowing that it was of no evidentiary value; and they harmed his dog. Because it is unaddressed in Defendants' Motion, this portion of Plaintiff's Fourth Amendment claim may also proceed.

### C. Insufficiency of Second Warrant

As a reminder, the officers executed a second search of Thorp's home pursuant to a second warrant based on the amphetamines discovered during the first search. With regard to the

second warrant, Defendants again argue that Kyle is entitled to qualified immunity for relying on

an objectively reasonable warrant.  Plaintiff, on the other hand, maintains that there was no

probable cause for the second search – because he had a prescription for a drug containing

amphetamines – and that Kyle knew as much.  See SAC, ¶¶ 57-58.

More fundamental than either of these contentions, however, is the relationship between

the two search warrants: the application for the second warrant was premised on the discovery of

drugs in Thorp's home during the first search.  Indeed, the affidavit supporting the second

warrant application averred that "the amount of amphetamines found in [Thorp's] freezer is more

consistent with intent to distribute and not mere personal use."  MTD, Exh. A (Second Search

Warrant) at 3; see also Andreen v. Lanier, 573 F. Supp. 2d 1, 3 n.1 (D.D.C. 2008) (in civil

challenge to allegedly unlawful search, "[t]he Court may take judicial notice of the search

warrant and affidavit without converting the motion to dismiss into a motion for summary

judgment").  If, as Plaintiff alleges, the first warrant was invalid and Kyle, knowing it to be so,

violated the Fourth Amendment in conducting the first search, then any evidence obtained as a

result of that search would constitute "fruit of the poisonous tree."  The second search warrant

could be valid only if it were premised on evidence obtained independently of the first, unlawful

search.  See Segura v. United States, 468 U.S. 796, 799 (1984) ("[W]e hold that the evidence

discovered during the subsequent search of the apartment the following day pursuant to the valid

search warrant issued wholly on information known to the officers before the [unlawful] entry

into the apartment need not have been suppressed as 'fruit' of the illegal entry because the

warrant and the information on which it was based were unrelated to the entry and therefore

constituted an independent source for the evidence.") (emphasis added); see also Murray v.

United States, 487 U.S. 533, 542 (1988) ("The ultimate question, therefore, is whether the search

pursuant to warrant was in fact a genuinely independent source of the information . . . .  This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial [illegal] entry, or if information obtained during that [first] entry was presented to the Magistrate and affected his decision to issue the warrant.").

Because Defendants never contend that the second search warrant was obtained with information from an "independent source" – untied to the first, allegedly defective warrant – the Court concludes that this portion of Count III – alleging that the second search was unlawful – states a claim for relief.  It, accordingly, survives Defendants' Motion.

### D.  Improper Execution of Second Warrant

Defendants present no basis for dismissal of Thorp's claim that the manner of execution of the second warrant violated the Fourth Amendment.  Hence, insofar as Count III alleges that the second search was conducted unlawfully, it also may proceed.

### E.  Count IV: "Negligent Supervision/Negligent Retention"

Next, Plaintiff alleges that the District knew that Kyle "conduct[ed] unlawful searches of private property" and "rewarded and encouraged [this] misconduct" by promoting him.  See SAC, ¶¶ 103-104.  Such behavior, he contends, constitutes negligent supervision.  Id., ¶¶ 105-107.

In moving to dismiss, Defendants argue only that this count cannot be maintained against Kyle, since he obviously cannot supervise or retain himself.  Although Plaintiff never specifies which counts are alleged against which Defendants, the Court assumes he only meant to plead this one against the District.  To the extent Count IV is asserted against Kyle, he is dismissed as a Defendant.

F.   Count V: "Conspiracy to [D]eprive Plaintiff of Civil Rights"

Count V alleges a "Conspiracy to deprive Plaintiff of Civil Rights."  SAC, ¶¶ 108-111.

Seeking dismissal, Defendants contend that Thorp's allegations are too vague and conclusory to

make out the elements of conspiracy, see MTD at 9-10, and the Court concurs.

A conspiracy is comprised of three elements: (1) an agreement between multiple entities

(2) to injure another and (3) an overt act taken in furtherance of that agreement.  Brady v.

Livingood, 360 F. Supp. 2d 94, 104 (D.D.C. 2004) (citation omitted).  "To state sufficient facts

to support an agreement, plaintiff should allege the existence of any events, conversations, or

documents indicating there was an agreement between the defendants to violate his rights."

Bush v. Butler, 521 F. Supp. 2d 63, 68 (D.D.C. 2007).  "A complaint must set forth facts making

the existence of a conspiracy plausible; conclusory statements are not enough."  Kenley, 83 F.

Supp. 3d at 30.

Here, as in Butler, Plaintiff "provides no description of the persons involved in the

agreement, the nature of the agreement, what particular acts were taken to form the conspiracy,

or what overt acts were taken in furtherance of the conspiracy," but offers only "[t]he mere

repetition of a conclusory statement that a conspiracy exists and that all the alleged events

occurred as a result."  Butler, 521 F. Supp. at 68-69.

In setting out the count, Thorp alleges only that "Defendant Kyle and other persons,

including Henderson, have conspired to deprive the Plaintiff of his ordinary constitutional

rights."  SAC, ¶ 109.  The most directly relevant allegation in the factual section of the

Complaint states that "Defendant Kyle has regularly communicated with Henderson and

unknown members of the Metropolitan Police Department Command Staff to conspire to use

assets and personnel of the Metropolitan Police Department to intimidate and retaliate against the

Plaintiff for his exercise of ordinary civil processes to seek redress against Henderson for her

tortious acts." SAC, ¶ 34. Yet this is insufficient. For instance, the Complaint never explains

how Henderson, a key figure in the purported conspiracy, directed or participated in the activities

of Kyle and his fellow officers. Similarly, Thorp maintains that Kyle and other officers harassed

him with the intent of intimidating him but does not articulate the goal of such intimidation –

after all, he had already prevailed in his lawsuit against Henderson before the commencement of

the events detailed in the Complaint. And while Thorp at one point alleges that "searches for

illegal drugs were Kyle's true motivation for the search of the Plaintiff's home," id., ¶ 51, he

elsewhere insists that Kyle was motivated by his romantic animus. See id., ¶¶ 29, 130. Thorp

also stops short of explaining the connection of such animus to Henderson or in any way

clarifying the nature or form of their agreement.

In sum, the Complaint's vague and somewhat contradictory allegations are precisely the

sort that are "insufficient as a matter of law" to state a claim of civil conspiracy. Butler, 521 F.

Supp. 2d at 69. The Court, consequently, will dismiss this count.

G. Count VII: "Common Law Malicious Prosecution"

In Counts VI and VII, Thorp seeks to advance a claim of malicious prosecution under

§ 1983 and D.C. common law, respectively; because resolution of the latter is more

straightforward, the Court will tackle it first. To support a malicious-prosecution claim in the

criminal context, "[t]here must be (a) a criminal proceeding instituted or continued by the

defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c)

absence of probable cause for the proceeding, and (d) malice, or a primary purpose in instituting

the proceeding other than that of bringing an offender to justice." Amobi v. D.C. Dep't of Corr.,

755 F.3d 980, 992 (D.C. Cir. 2014) (quoting DeWitt v. District of Columbia, 43 A.3d 291, 296

(D.C. 2012)) (internal quotation marks omitted).  In this case, the parties' dispute centers on the second element.  Plaintiff alleges that "Kyle and other unknown persons instituted the criminal proceeding maliciously" against Plaintiff, but that "[s]uch criminal prosecution has terminated in the Plaintiff's favor."  SAC, ¶¶ 115, 118.  Defendants, meanwhile, insist that merely alleging a "favorable termination" is insufficient to establish the first prong of a malicious-prosecution claim.  See MTD at 12 ("Showing that a criminal action was dismissed is not enough; he must show it was dismissed with prejudice.") (citations omitted).

Defendants are correct that the termination of the criminal proceedings must "reflect on the merits of the underlying action."  Brown v. Carr, 503 A.2d 1241, 1245 (D.C. 1986) (internal quotation marks and citation omitted).  They are also correct that this normally requires a showing of dismissal with prejudice.  See Kenley, 83 F. Supp. 3d at 42 (dismissing common-law malicious-prosecution claim due to the "shortcoming [of Plaintiff] Kenley's failure to allege that the [criminal] charges were dismissed with prejudice").  Thorp's Complaint suffers from the same defect noted in Kenley.  Not only does it fail to allege that his prosecution was dismissed with prejudice, but it includes no additional details about the termination of the criminal proceedings beyond the assertion that it was "favorable."  The bare allegation of a favorable termination is not enough, without specific factual allegations detailing the nature or cause of that termination, to raise the viability of the malicious-prosecution claim "above the speculative level."  Twombly, 550 U.S. at 555.

Further undermining this count is Defendants' submission of the docket for Thorp's criminal case, which includes the notation that it was "Dismissed for Want of Prosecution" because "Government was not ready to proceed with this case."  MTD, Exh. B (criminal docket sheet) at 2.  This, of course, is a dismissal without prejudice.  The Court may take judicial notice

of this criminal docket sheet when adjudicating a motion to dismiss, see Kenley, 83 F. Supp. 3d

at 43, and will do so here.  Thorp "does not allege that the prosecutor gave any reasons – *e.g.,* a

lack of evidence – during the Superior Court proceedings for abandoning the charges," id. at 42,

and therefore has not satisfied the favorable-termination prong of a malicious-prosecution claim

under D.C. law.  As a result, the Court will dismiss Count VII.

H.  Count VI: "§ 1983 Malicious Prosecution"

In Count VI, Thorp seeks to advance the same claim under Section 1983, which, in this

circuit, requires a predicate Fourth Amendment violation.  See Pitt, 491 F.3d at 511 ("We join

the large majority of circuits in holding that malicious prosecution is actionable under 42 U.S.C.

§ 1983 to the extent that the defendant's actions cause the plaintiff to be unreasonably 'seized'

without probable cause, in violation of the Fourth Amendment.").  Plaintiff has alleged that he

"was seized and deprived of his liberty following his arraignment," which provides the predicate

Fourth Amendment violation.  See SAC, ¶ 117.

Defendants raise two bases for dismissal of this § 1983 claim.  First, they believe it is

redundant of Thorp's Fourth Amendment claim in Count III.  See MTD at 11.  The Court need

not decide whether a plaintiff could concurrently make out both a wrongful-seizure and a

malicious-prosecution claim under § 1983 regarding the same conduct.  This is because

Plaintiff's Fourth Amendment claim in Count III concerns conduct different from what is at issue

in this count.   More specifically, while Thorp's Fourth Amendment claim focuses on improper

searches and seizures of his property, see SAC, ¶¶ 95-96, his § 1983 malicious-prosecution claim

complains specifically of the seizure of his person "following his arraignment."  Id., ¶ 117.

Plaintiff alleges that he "was subjected to burdensome and humiliating conditions of pre-trial

release which included drug testing and weekly interviews with court officials," and that such

conditions amounted to an unlawful seizure.  Id., ¶ 76.  As this allegation is factually distinct

from those found in Count III (and Count II), it is not redundant.

Second, Defendants argue that the § 1983 claim must be dismissed because Plaintiff does

not allege facts indicating that the criminal prosecution was terminated in his favor – not just

dismissed – a requirement of a malicious-prosecution claim under D.C. common law.  See

Section III.G, supra.  The D.C. Circuit has not held that the requirements for a common-law

malicious-prosecution claim under D.C. law apply with equal force to one brought under § 1983.

In Pitt, that court's first and only pronouncement on the topic, it mentioned only that the

underlying criminal proceedings against the Plaintiff were "dismissed" – not dismissed with

prejudice – because the parties did not contest Plaintiff's innocence of the underlying criminal

charges in that appeal.  See Pitt, 491 F.3d at 501.

Defendants cite Wallace v. Kato, 549 U.S. 384, 391 (2007), in support of their position

that a favorable termination is required for this count, but in that case the Supreme Court actually

declined to decide whether a malicious-prosecution claim is even cognizable under § 1983 – so

the Court certainly did not spell out the elements of such a claim.  Id. at 390 n.2; see also

Albright, 510 U.S. at 274-75 (noting "the Fourth Amendment's relevance to the deprivations of

liberty that go hand in hand with criminal prosecutions," but "express[ing] no view" as to

whether an improper-prosecution claim brought under the Fourth Amendment and § 1983 could

succeed).

At the same time, several other circuits have held that a favorable termination is required

for a § 1983 malicious-prosecution claim.  See, e.g., Kossler v. Crisanti, 564 F.3d 181, 186 (3d

Cir. 2009) (holding that plaintiff's "fail[ure] to establish . . . the favorable termination of his

underlying criminal proceeding—was fatal to his claims" of malicious prosecution under

§ 1983); Murphy v. Lynn, 118 F.3d 938, 943 (2d Cir. 1997) ("[I]n order to succeed on a malicious prosecution claim under § 1983, [plaintiff] was required to prove . . . the termination of that proceeding in favor of the plaintiff") (internal quotation marks omitted); Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 183-84 (4th Cir. 1996) ("[A plaintiff's] allegations that [the defendant] seized him pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor are sufficient to state a § 1983 malicious prosecution claim alleging a seizure that was violative of the Fourth Amendment."). And in the § 1983 false-arrest context, the Supreme Court has emphasized the importance of the favorable-termination requirement, underscoring that it "avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of . . . two conflicting resolutions arising out of the same or identical transaction." Heck v. Humphrey, 512 U.S. 477, 484 (1994) (internal quotation marks and citations omitted).

In light of that consideration, and because the weight of authority supports this approach, the Court will follow those circuits requiring a showing of favorable termination for a § 1983 malicious-prosecution claim. And because, as explained in Section III.G, *supra*, Plaintiff has not sufficiently alleged such facts, the Court will dismiss Count VI.

I.   Counts VIII and IX: "Abuse of Process I & II"

Counts VIII and IX both allege that, in his interactions with Thorp, Kyle abused his position as a police officer with authority within the criminal-justice system. The counts are labeled "Abuse of Process I" and "Abuse of Process II." SAC, ¶¶ 124-131. Defendants argue that these counts "are the same claim, with two different allegations of an ulterior motive for Lt.

Kyle," MTD at 12, and they insist that the District is not liable under these counts.  The Court will first address the issue of consolidation.

To state a claim for abuse of process, Plaintiff must establish "two essential elements . . . . : '(1) the existence of an ulterior motive; and (2) an <u>act</u> in the use of process other than such as would be proper in the regular prosecution of the charge.'"  <u>Id.</u> (quoting <u>Hall v. Hollywood Credit Clothing Co.</u>, 147 A.2d 866, 868 (D.C. 1959)).  Here, the gravamen of both abuse-of-process counts appears to be that Kyle exercised his law-enforcement authority improperly – either "to retaliate against the Plaintiff for his civil claims against Henderson" (Count VIII, SAC, ¶ 126) or "to punish and injure the Plaintiff because of some animosity caused by Kyle's and the Plaintiff's relationship history with the same woman" (Count IX, SAC, ¶ 130).  Because both counts allege, at bottom, that the <u>same set</u> of acts taken by Kyle were motivated by improper aims, the Court will consolidate them into a single abuse-of-process count moving forward.

In their Motion, Defendants also contend that "[n]either of Plaintiff's abuse of process claims appears to be against the [D]istrict."  MTD at 12.  The Court concurs that this is so, as the Complaint neither alleges that the District shares Kyle's "ulterior motives," nor that it was motivated by other ulterior motives of its own.  <u>See</u> MTD at 13.  While the Complaint does not allege that the District was <u>directly</u> liable for any abuse of process relating to Plaintiff, the Court nevertheless believes that a reasonable factfinder could find the city <u>vicariously</u> liable under the doctrine of *respondeat superior*.  According to that doctrine, "an employer may be held liable for the acts of his employees committed within the scope of their employment."  <u>Brown v. Argenbright Sec., Inc.</u>, 782 A.2d 752, 757 (D.C. 2001) (quoting <u>Boykin v. District of Columbia</u>, 484 A.2d 560, 561 (D.C. 1984)).

The District asserts that it cannot be vicariously liable for any abuse of process because the only actions in the Complaint that "could serve as the act that is an 'abuse' of the process against Plaintiff" were "the allegedly fraudulent search warrant affidavits used to start the process against Plaintiff" and "Kyle allegedly lying to the Assistant United States Attorney"; these acts, the city maintains, are outside the scope of Kyle's employment.  See MTD at 13.  The Court does not agree.  Such conduct – applying for a search warrant and communicating with a prosecutor – readily falls within the scope of Kyle's employment with MPD, rather than being activity that "is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve" his employer.  See District of Columbia v. Coron, 515 A.2d 435, 437 (D.C. 1986).  This is precisely the sort of activity in which MPD officers typically engage.  And even if some of Kyle's motives were purely his own, where the employee "acted, at least partially," to serve his employer's interests, his actions still fall within the requisite "scope" of employment.  Hechinger Co. v. Johnson, 761 A.2d 15, 25 (D.C. 2000).  In any event, "[s]cope of employment is ordinarily a question for the jury," Doe v. Sipper, 821 F. Supp. 2d 384, 388 (D.D.C. 2011), and here the Court cannot conclude that, as a matter of law, Kyle's actions were outside such parameters.  The Court will thus consolidate Counts VIII and IX into a single abuse-of-process claim, which will proceed on a direct-liability theory as to Kyle and a vicarious-liability theory as to the District.

J.   Count X: "Injunctive Relief"

The District seeks dismissal of Plaintiff's final count, which Thorp labels as a claim for "Injunctive Relief," because it does not state a stand-alone cause of action.  See SAC, ¶¶ 132-33; MTD at 14.  The District is correct that "[i]njunctive relief . . . is not a freestanding cause of action, but rather – as its moniker makes clear – a form of relief to redress the other claims

asserted by Plaintiff." <u>Base One Technologies, Inc. v. Ali</u>, 78 F. Supp. 3d 186, 199 (D.D.C.

2015). The Court will therefore dismiss Count X as a separate claim. Such dismissal, however,

does not preclude Thorp from seeking injunctive relief in the event that he ultimately prevails on

one or more of his claims. <u>See</u> <u>id.</u>

 K. <u>Plaintiff's Motion for Partial Summary Judgment</u>

 In addition to opposing Defendants' Motion to Dismiss, Plaintiff also filed his own

Motion for Partial Summary Judgment. In that Motion, he states that because there is "no factual

dispute that the District of Columbia seized at least $53,326 in currency from the Plaintiff on

February 4, 2015, [and] that there is neither a criminal proceeding pending against the Plaintiff

nor a civil forfeiture proceeding, . . . the District of Columbia deprives the Plaintiff of such

currency in violation of the law." Partial MSJ at 1. Finding that Plaintiff falls far short of the

showing required to succeed under Rule 56, the Court will deny the Motion.

 To begin, Thorp's Motion never identifies the count on which he would like the Court to

grant summary judgment. While the Motion contends that the District seized an amount of cash

in excess of $53,000 and has not returned it, neither that figure nor any other particular amount

of currency appears anywhere in the Complaint. Without knowing which count is at issue, the

Court, of course, cannot determine that he is "entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).

 At best, the Court can only speculate that Thorp means to ask the Court for summary

judgment on <u>part</u> of Count III, which alleges that "Plaintiff's dog and other property were seized

without lawful cause," SAC, ¶ 83, without specifying what items are included in this "other

property." Even such an assumption, however, would not cure all the deficiencies of the Motion.

For Plaintiff also fails to specify where, in the record, the Court may find evidence establishing

25

that there is no genuine dispute on the factual issues material to the relief he seeks.  Yet "it is

[his] obligation, and not this Court's, to locate and cite to the appropriate portions of the record

that support [his] arguments on summary judgment.  In order to ensure clarity of argument, the

parties may not incorporate by reference factual statements made in other pleadings, but each

motion must independently contain all facts that the party believes are relevant to resolution of

the issues raised in that particular motion."  Sloan v. Urban Title Servs., Inc., 689 F. Supp. 2d 94,

99 (D.D.C. 2010).  In this district, Local Rule "7(h)(1) places the burden on the parties and their

counsel, who are most familiar with the litigation and the record, to crystallize for the district

court the material facts and relevant portions of the record," not least because failure to do so

"leaves the Court to guess which of the many factual statements set forth . . . are purportedly of

relevance to the instant motions."  Id. (internal quotation marks omitted) (citing Jackson v.

Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 151 (D.C. Cir. 1996)).  Absent

any citations to the record, or to any evidence whatsoever, Plaintiff cannot establish his

entitlement to summary judgment at this time.

Defendants, moreover, contest nearly all of the "undisputed facts" enumerated in Thorp's

Motion – including the amount of money seized and the existence of civil-forfeiture proceedings

pending against Plaintiff.  See Defendants' Statement of Material Facts in Dispute, ¶¶ 2-5.

Where the nonmovant has "set forth specific facts showing that there is a genuine issue for trial,"

summary judgment is not appropriate.  Anderson, 477 U.S. at 256.  Because Plaintiff has not

demonstrated the absence of a dispute of material facts and his entitlement to judgment as a

matter of law, the Court will deny his Motion for Partial Summary Judgment.

**IV.      Conclusion**

For the foregoing reasons, the Court will deny Plaintiff's Motion for Partial Summary Judgment, and grant in part and deny in part Defendants' Motion to Dismiss.  The counts that survive Defendants' Motion are: Counts II and III, against Kyle only, and for the specific Fourth Amendment violations noted; Count IV, under D.C. common law, against the District only; and Counts VIII and IX, consolidated into a single claim against Kyle on a direct-liability theory and against the District on a vicarious-liability theory.  The Court will issue a contemporaneous Order to that effect this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: November 5, 2015